L. R. Wade et al. v. J. B. Nunnelly et al.

Decided June 8, 1898.

1. Streets—City Ordinance—Right to Use as Market.

Owners of business property have no vested right to make marts of the streets, alleys, and other public places, and can not maintain an injunction against the enforcement of an ordinance of a city prohibiting and punishing the exhibition and sale of certain articles of country produce upon the streets, etc., within the fire limits of a city on the ground of irreparable injury to their business therefrom.

2. Same—Invalid Ordinance.

Allegations showing that an ordinance prohibiting sale of country produce upon the public streets was invalid by reason of irregularities in its adoption would not give merchants owning adjacent business property the right to enjoin its enforcement, no right of property being shown to be irreparably injured by depriving them of market privileges in the streets.

3. City Ordinance—Invalidity—Pleading.

An ordinance is not shown to be invalid by reason of failure to pursue the course prescribed for cities incorporated under the general law in its enactment, unless it is also shown that the city was one incorporated under such law.

Appeal from Bell. Tried below before Hon. Jno. M. Furman.

Banks & Cochran and A. L. Curtis, for appellants.

C. A. Brand, for appellees.

Key, Associate Justice.—This is an injunction suit brought by appellees. The trial court perpetuated the temporary injunction, and the defendants have appealed. A general demurrer and several special exceptions to the plaintiffs' petition were overruled; and these rulings are the matters complained of by appellants. Omitting certain formal parts, the petition reads as follows:

"As plaintiffs in this cause, now come by attorney, J. B. Nunnelly, T. L. Hollingsworth, W. D. Cox, and A. F. Bentley, and complain of L. R. Wade, as mayor of the city of Temple, and William Taylor, marshal of the city of Temple, as defendants herein, and by this petition represent:

"That plaintiffs and defendants are all resident citizens of said Bell County; that heretofore, to wit, in the year 1881, George Sealy, as owner in possession of all that land in the Maximo Moreno eleven-league grant in said Bell County which now includes and embraces all of the original survey of the said city of Temple, by having the same surveyed and laid off and divided into lots and blocks, streets, avenues, and alleys, and by making, having made, and by having the same recorded in the land deed records of said Bell County, in the office of the county clerk of said county, a map of said survey showing the location of said lots and blocks into which the said survey was divided, and the streets, avenues, and alleys in the same; that for the purpose of locating and establishing the town of Temple, said George Sealy donated and dedicated to the public use, absolutely and without reservation, all of the said streets, avenues, and alleys,

as shown by said map and as located and established by said original survey, and sold to various persons the lots into which said blocks in said survey was divided as aforesaid, for purposes of residences and business, and for which purposes said lots were purchased and received and occupied by various persons.

"That a large portion of said survey, and the blocks therein, were divided into business lots, and were designated and bought and sold as such —30 by 110 feet in dimension, and so laid out and located in and by said original survey, and according to said map thereof; that each of said lots fronted on a street 80 feet wide, with an alley in the rear 20 feet wide, which are the same streets and alleys hereinbefore referred to, and dedicated to public use by said George Sealy as aforesaid.

"That before the said city of Temple was incorporated and became a municipal corporation, on the lots in blocks Nos. 20, 21, 22, 27, 28, 29, 30, 33, and 34, in said town of Temple as located and surveyed by said George Sealy, and bounded on the north by Avenue C, on the east by Fourteenth Street, on the south by the right of way of the Gulf, Colorado & Santa Fe Railway, and on the west by Sixth Street, according to said survey, were built all the business houses and established the places, houses, and offices of business in and for said town of Temple, and that on and in the streets adjacent to said lots and blocks and places of business all the agricultural products which were brought to said town of Temple for sale or barter, including cotton, corn, oats, wood, hay, and cotton seed, were exhibited for sale and barter, and were there sold and bartered, and from that time to this have been there exhibited, sold, and bartered. That said streets and avenues are 80 feet wide and cross each other at right angles, once in every 240 feet going east and west, and every 300 feet going north and south, and furnish ample and convenient room for the exhibiting, sale, and barter of the products aforesaid; for which purpose, together with the use of the same for travel in and about the management of such products and sale thereof, and the business transactions in said city of Temple, said streets and avenues were opened and dedicated to the public use.

"That in that part and portion of said city of Temple herein last before described, which is known as the business part of said city, from the time said town was laid out and established to this time, all of the mercantile and business affairs in and of said city of Temple have been done in said streets and avenues and the houses fronting thereon, and are still done there, amounting to millions of dollars annually; and that owners of said lots who purchased the same because of their relation to and position on said streets, avenues, and alleys, which have been dedicated to public use, as aforesaid, in order to provide for such business, have built and erected and own on said lots, at immense cost, brick and other commodious fireproof stores, trading houses, places of business, and offices in said city, and of all the business men therein and in said business part of said city, are established and used in suitable rooms and

quarters, the telegraph and telephone offices, sample rooms, banks, post-office, insurance offices, and the offices and business places of almost every man who does business in said city of Temple, and all the appliances and accommodations of trade and business.

"That these plaintiffs and each one of them are, and for a long time before the beginning of the year 1894 have been, engaged in the mercantile business in said business part of said city of Temple, as hereinbefore described, and have at great expense erected the said fireproof buildings therein for the purposes of transacting their business with their customers, and in which to buy and sell their merchandise and the various products of the country.

"That heretofore, in the year 1890, according to the power given by the law to establish and prescribe a fire district, the city council of said city of Temple by ordinance established a fire district in said city, which fire district is bounded as follows: Beginning at the north boundary line of the right of way of the Gulf, Colorado & Santa Fe Railway, in center of Fourteenth Street; thence north in the middle of Fourteenth Street to the center of Avenue C; thence west in the center of Avenue C to the center of Eighth Street; thence south in the center of Eighth Street to the center of Avenue D; thence west in the center of Avenue D to the center of Sixth Street; thence south in the center of Sixth Street to the right of way of the Gulf, Colorado & Santa Fe Railway Company at or near its passenger depot; thence down the right of way southerly to the place of beginning; which fire district includes and embraces all of the business houses in said city, and offices, banks, and places where the business of and in the city of Temple is transacted.

"That in said fire district, located and established as aforesaid, all the commercial and trading business in said city has been done since the beginning of the existence of said city, and where the same was permanently established and conducted before the incorporation of said city of Temple.

"That these plaintiffs and each one of them, and all the merchants and business men of said city of Temple, for a long time prior to August, 1894, were engaged in the mercantile and trading business in said fire district and business part of said city of Temple, and were engaged in selling to the citizens of said city, and of a large scope of country around, all the articles of merchandise, machinery, agricultural implements, vehicles, groceries, etc., and in buying and selling at their said places of business various articles of farm and country produce, including cotton, corn, oats, hay, wood, and cotton seed; and in order to provide proper and suitable houses, offices, and places to carry on their said business with facility and satisfaction to themselves and their customers, have spent large sums of money in buying lots, building houses, making sidewalks and crosswalks, grading and improving streets in said business part of said city and in the fire district therein, and that these plaintiffs and each one of them and all of the merchants and business men of said city of Temple, are still so engaged in said business and have their means and money in-

vested therein, and still own, use, and occupy said buildings as aforesaid.

"That heretofore, to wit, on the 14th day of August, 1894, the city council of the city of Temple, unlawfully and without power or authority to do so, adopted and pretended to adopt an ordinance of and for said city in words and figures substantially as follows:

" 'An ordinance prohibiting the bartering or selling, exhibiting or keeping for barter or sale, and the buying and trading for cotton, corn, oats, hay, wood, or cotton seed, upon any street, alley, or other public place within the fire limits of said city of Temple, except the public square, and fixing and providing penalties for the violation thereof.

" 'Be it ordained by the city council of the city of Temple:

" 'First. That from and after the taking effect of this ordinance, it shall be unlawful for any person, corporation, firm, or association of persons to place, keep, or exhibit, or offer for sale or barter, any cotton, corn, oats, hay, wood, or cotton seed, upon or on any street, alley, or other public place within that portion of the city of Temple that is now or that may hereafter be designated and defined as the fire limits of said city of Temple, except the public square.

" 'Second. It shall be unlawful for any person, corporation, firm, or association of persons to place or permit to remain for more than ten minutes upon any street, alley, or public place, except the public square aforesaid, within said fire limits, any wagon or other vehicle or conveyance loaded or partially loaded with cotton, corn, oats, hay, wood, and cotton seed.

" 'Third. It shall be unlawful for any person, corporation, firm, or association of persons to buy, or in any manner barter or trade for any cotton, corn, oats, hay, wood, and cotton seed upon or on any street, alley, or other public place in the fire limits of said city of Temple, or which may, at the time of such purchase, trade, or barter, be situated in or upon any street, alley or other public place within the said fire limits, except said public square.

" 'Fourth. That every person, corporation, firm, or association of persons violating any of the provisions of this ordinance, or that may be guilty of doing any act or thing hereby prohibited, or that may by the terms of this ordinance be declared or defined to be unlawful, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum not less than one dollar nor more than twenty-five dollars.

" 'Fifth. Whereas, the marketing of cotton, corn, and other farm products has already begun, an imperative public necessity exists requiring that the rule which requires ordinances to be read at three separate meetings be suspended, and the same is hereby suspended, and this ordinance shall take effect and become of force from and after its passage and legal publication.

" 'Approved and adopted this 14th day of August, 1894.

" 'L. R. WADE, Mayor

" 'Attest: C. K. WHITE, Sect'y.'

"That the streets, alleys, and avenues in the city of Temple, and especially in that portion thereof to which the said ordinance relates, and about which the same was adopted and pretended to be adopted, were laid out and established and devoted and dedicated to the public use and to the use and benefit of persons buying and selling and trading in the articles and property which said ordinance prohibits and forbids to be sold and bought and traded for in and about said streets, avenues, and alleys, and other public places, and were for that purpose made, and are much wider than streets in other cities and towns in the State and adjacent to Temple; that no part of said public square named and referred to in said ordinance is in said fire district, nor is any part of it in the business part of said city of Temple; besides, said public square is occupied by the market-house and the opera-house, the firemen's hall or city hall, the engine-houses, large horse stables, firemen's sleeping apartments, extensive hose platforms, engines, vehicles, wagons, and fire apparatus, city prison, dog pound, privies and sinks, watering trough, and sheds of said city, all of which occupy a large proportion of said square; that said square is not adjacent to the business part of said city of Temple, but is bounded to a large extent by dwelling-houses and inclosed vacant lots, by reason of all which, said public square is not sufficient to accommodate and provide space for the trade in the products marketed at Temple.

"That said ordinance is illegal, unconstitutional, and wholly void, and can not be legally executed or enforced, because:

"(1.)   Without cause or reason, by its provisions, it unlawfully and oppressively prohibits and prevents the purchase, sale, keeping, and exhibiting and offering for sale by these plaintiffs and all other persons, in the streets, avenues, alleys, stores, houses, and all other public places in the permanent and established business parts, places, and markets of said city of Temple, and unlawfully discriminates against the trading and business portion of said city of Temple, in favor of other portions thereof, in staple articles of commerce and the leading products of the country, viz., cotton, corn, oats, hay, and wood.

"(2.)   By its provisions said ordinance unlawfully and unjustly prohibits and prevents these plaintiffs, and each one of them who have permanently established and legal and proper places of business, in the business portions of said city of Temple, from buying, selling, keeping, exhibiting, bartering or offering to sell or in any manner dealing with other persons in cotton, corn, oats, hay, wood, and cotton seed, which is an unlawful discrimination against these plaintiffs in favor of others who may engage in business in other parts and portions of said city of Temple.

"(3.)   Said ordinance in all of its provisions is in restraint of trade, and is contrary to public policy, in that it absolutely prohibits all buying and selling and in any manner dealing in cotton, corn, oats, hay, wood, and cotton seed by sample, or without sample, and whether the same or any part of the same is present or exhibited in the permanent and established markets and trading places of said city of Temple.

"(4.) Said ordinance is void and can not be enforced, because it is not within the power of said city council of said city, granted by law, to make, adopt, or enforce ordinances.

"(5.) Said ordinance is void for uncertainty, in that its provisions apply to the 'fire limits' of said city, when in fact there is no such thing as fire limits therein.

"(6.) Said ordinance was adopted finally at the meeting of the city council at which the same was presented, and was not referred to the ordinance committee, was not read at three separate meetings of said city council, and has never been filed in the office of the city secretary, and does not recite and set forth any imperative public necessity for the suspension of the rule requiring ordinances to be read at three several meetings of the city council.

"That said defendant L. R. Wade is the duly qualified and acting mayor of said city of Temple, and said William Taylor is the duly qualified and acting marshal of said city, both of whom are performing the functions of their said respective offices in said city, and as such propose and threaten to arrest, prosecute, and convict these plaintiffs and any and all persons whomsoever who shall sell or buy, or offer to sell or barter, or who shall exhibit in the business part and portion of said city, any cotton, corn, oats, hay, wood, or cotton seed, whereby these plaintiffs will be greatly harassed, injured, and damaged, and their business and the business of each one of them will be injured and damaged, against which threatened wrongs and injuries these plaintiffs nor any one of them have any adequate and sufficient remedy at law, and which wrongs, if permitted, will do these plaintiffs great and irreparable injury and damage.

"The premises considered, plaintiffs pray that a temporary writ of injunction be granted, commanding said L. R. Wade and said William Taylor, respectively mayor and marshal of said city of Temple, to desist from making or carrying out said threatened prosecutions under and by virtue of said ordinance, and restraining them and each of them and all other persons acting with or for them from prosecuting these plaintiffs or either of them or other persons under said void ordinance, or in any manner interfering with said sale, barter, or exchange of said property on said streets, avenues, alleys, and public places; and that said defendants be cited to answer this cause; and that on a hearing said ordinance, by the decree of the court, be held and declared void and of no effect, and that plaintiffs have judgment against defendants by which said injunction shall be perpetuated and said defendants be perpetually enjoined and restrained from enforcing or attempting in any manner to enforce said void ordinance; and for costs of this proceeding, and for such other relief as according to the law and facts plaintiffs may be entitled to."

We think the court erred in overruling the general demurrer and some of the special exceptions to the plaintiffs' petition. This case is distinguishable from City of Austin v. Cemetery Association, 87 Texas, 330, where it was held that injunction was a proper remedy against the enforcement of a void ordinance. In that case, the general rule is recog-

nized that the aid of a court of equity can not be invoked to enjoin criminal prosecutions. In stating the exception to the rule, the court quoted the language of another tribunal, that "the court will interfere to prevent acts amounting to crime, if they do not stop at crime, but also go to the destruction or deterioration of the value of property." And in further discussing the case it is said: "It is true that if the ordinance be void, any one prosecuted under its provisions may have it so declared, either in the original criminal action or by suing out a writ of habeas corpus. Notwithstanding this fact, it is clear to us without the statement of the conclusion by the Court of Civil Appeals, that the effect of the ordinance is such that if its enforcement be not restrained it may result in a total destruction of the value of appellee's property for the purpose for which it was acquired." And it was upon this ground that the court held that injunction was a proper remedy in that case.

Therefore, if the ordinance under consideration in the case at bar will have a like effect upon the property of appellees as had the ordinance in the case referred to, then appellees are entitled to relief by injunction; otherwise, they are not.

The ordinance in question does not undertake to prevent or interfere with the right of the appellees to purchase, sell, or otherwise deal in the products referred to upon their own premises; nor does it prohibit other persons from carrying such products and delivering them to appellees upon their premises. It may and doubtless will interfere with the privilege formerly enjoyed by the public at large of exhibiting such products upon the streets and in other public places within the territory referred to, and the convenience resulting therefrom to the appellees as dealers in such products. But appellees have no vested right to make marts of the streets, alleys, and other public places; and to deny them the privilege of so doing is not to destroy or deteriorate any of their property rights. It may result in inconvenience, and even additional expense to them; but there are many laws, and especially police regulations, that have this effect, and are nevertheless valid.

It is contended, however, that the ordinance is void because it prohibits the sale or purchase of the products referred to in the territory designated, although the property may not, at the time of the sale, be within the corporate limits of the city of Temple. Therefore, it is insisted that the ordinance should be declared void because of its unreasonableness.

If it should be held that the city council was without power to pass an ordinance prohibiting the making of contracts of sale for future delivery in the streets and other public places, and that the ordinance in question reaches that far, still, that feature of it can be eliminated and a valid ordinance prohibiting the exhibition and dealing in such articles will remain. Besides, as before stated, unless irreparable injury will result to vested property rights, appellees are not entitled to relief by injunction, even though the ordinance be void.

In reference to the allegation that the ordinance was adopted at a

meeting of the council at which the same was presented, was not referred to the ordinance committee, was not read at three separate meetings of the council, etc., it is sufficient to say that the petition does not show that the passage of the ordinance in the manner stated would be irregular or illegal. For aught that appears in the petition, the city of Temple may have a special charter, and the ordinance may have been passed in exact conformity with its requirements. Again, as said in reference to last preceding objection, if the ordinance be void for this reason, appellees are not entitled to an injunction restraining its enforcement, unless it is made to appear that such enforcement would result in irreparable injury to their property rights. As before stated, this is not made to appear.

The judgment of the District Court will be reversed, with instructions to sustain the general demurrer to the plaintiffs' petition.

*Reversed and remanded.*