## N. KISSINGER ET AL. v. S. J. HAY ET AL.

Decided November 14, 1908.

**1.—City Ordinance—Regulation of Public Vehicles—Injunction—Pleading.**

In a suit to enjoin the enforcement of a city ordinance prohibiting public vehicles from standing on certain streets during certain hours, a general allegation in the petition that the ordinance in question was unconstitutional, unreasonable and void was insufficient; it should have been shown in and by the petition wherein the city had exceeded its authority, and wherein the ordinance was unreasonable.

**2.—Same—Same.**

A city ordinance which vests in the city authorities the power to grant a

license to one public vehicle and refuse it to another, or to revoke a license for violation of an ordinance, is not necessarily void on the ground that it is discriminatory and partial. Such right is given in the interest of the public. Especially can not one who has not been refused a license, complain.

**3.—Same—Fee for License—Constitutionality.**

Charging a reasonable fee for the issuance of a license to own and operate a public vehicle in a city, is not double taxation, and therefore is not unconstitutional.

**4.—Same—Criminal Prosecutions—Injunction.**

Ordinarily an injunction will not lie to restrain criminal prosecutions, because an adequate and complete remedy is provided by law.

**5.—Same—Case Distinguished.**

The case of ex parte Battis, 40 Texas Crim. Rep., 112, considered and distinguished.

Appeal from the District Court of Dallas County. Tried below before Hon. J. C. Roberts.

*M. M. Parks* and *Ross M. Scott,* for appellants.—Equity has jurisdiction of any suit by a large number of taxpayers to enjoin a municipality from enforcing a void ordinance imposing a tax on private vehicles, or from enforcing pains or penalties against them, although a remedy at law might be at their command. City of Chicago v. Rumpff, 45 Ill., 90; City of Chicago v. Collins, 49 L. R. A., 408; ex parte Warfield, 40 Texas Crim. Rep., 413.

That the ordinance in question is arbitrary, oppressive and unreasonable, see the cases cited above, together with Ex parte Battis, 40 Texas Crim. Rep., 112; City of Helena v. Gray, 17 Pac., 564; City of Birmingham v. Alabama G. S. R. Co., 13 So., 141; State v. Hart, 24 So., 186.

That the limits prescribed by the ordinance in which hacks may stand is in the nature of the imposition of a burden, and prohibitory of their doing business between the hours of eight o'clock a. m. and seven o'clock p. m., and for that reason unreasonable and void, when the facts as alleged in the petition and admitted by the demurrer have been established by evidence, see Hirschfield v. City of Dallas, 29 Texas Crim. App., 245; ex parte Burnett, 30 Alabama, 461; Cool. on Tax., 11.

*James J. Collins* and *John C. Robertson,* for appellees.—The court did not err in sustaining appellees' exceptions to appellants' bill for an injunction, because it affirmatively appears from the petition of appellants that appellants are not entitled to restrain the enforcement of a penal ordinance of a city, even though said ordinance be void, where no property rights are invaded. Ex parte Sawyer, 124 U. S., 200; 31 L. ed., 402; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S., 781; City of Galveston v. Mistrot, 104 S. W., 417; Wade v. Nunnelly, 19 Texas Civ. App., 256; Greiner-Kelley Drug Company v. Truett, 97 Texas, 380; McQuillian on Ordinances, sec. 285, p. 437; York v. Ysaguairro, 31 Texas Civ. App., 36-39; High on Injunction, secs. 1213-4, vol. 2.

The ordinance in question is a valid exercise of the police power of the city over its streets, in prohibiting encroachments and obstructions

on the same, and regulating the use of said street. Ex parte Henson, 90 S. W., 875; City of Waco v. Powell, 32 Texas, 271; ex parte Battis, 40 Texas Crim. Rep., 112; subd. 4, sec. 7, Special Acts 1907, p. 16; sec. 43, art. 14, Special Acts 1907, p. 85; Barnes v. Dist. of Columbia, 27 App. D. C., 101; Harris v. Atlantic City, 62 Atl., 995.

The ordinance is a proper exercise of the police powers of the city of Dallas under its charter, and does not deny to appellants the due process of law nor the equal protection of the law, nor is it invalid because a discretion is reposed in the board of commissioners by the ordinance to grant and refuse the occupancy of portions of the public streets as a stand, in the meaning of the ordinance. Sec. 43 of art. 14, City Charter, Special Acts 1907; Wilson v. Eureka City, 173 U. S., 32; Davis v. Massachusetts, 167 U. S., 43, pp. 42-71, L. ed.; Fischer v. St. Louis, 194 U. S., 361; Nightingale Petitioner, 11 Pick., 168.

The amount of the license fee charged to the persons using the streets under the ordinance is not unreasonable, but is reasonable in all respects, and represents but a fair remuneration for the cost of inspection by the government of appellants' business. Brown v. City of Galveston, 75 S. W., 488; ex parte Gregory, 20 Crim. App., 219, 220.

Said ordinance having been passed under the express power of the city charter, and showing upon its face that it operates alike upon all persons of a certain class, is not void because it does not include other classes of persons, who are not within the class mentioned in the ordinance. McQuillan on Municipal Ordinances, sec. 193; Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 1-21; Hing v. Crowley, 113 U. S., 703.

RAINEY, CHIEF JUSTICE.—This is an injunction suit brought by appellants to enjoin the board of commissioners of the city of Dallas from the enforcement of an ordinance of said city regulating the standing of move wagons, express wagons, hacks and other vehicles left for hire, upon the streets of said city, and providing a license fee therefor. A temporary injunction was granted.

Defendant answered by exceptions, and moved to dissolve, upon a hearing of which the exceptions were sustained, the injunction dissolved and plaintiff's cause dismissed, from which this appeal is prosecuted.

Plaintiffs' petition alleged in substance that they were threatened to be prosecuted for a violation of the ordinance, and that they would be greatly harassed, annoyed and oppressed, and that a multiplicity of prosecutions would follow at great cost and expense to the appellants; that said ordinance is unconstitutional, unreasonable and oppressive and void, because it gives to the board of commissioners the discretion to say who shall and who shall not have a permit under the same, and because it is therefore discriminatory and partial; that the limits contained in the ordinance and the fines and penalties attached for disobedience of it, are unreasonable, and that the enforcement of the ordinance would amount to the practical confiscation of appellants' property; that said ordinance practically excluded appellants from doing business in the city; that the license fee imposed by the said ordinance upon the appellants was, in effect, double taxation.

Section 7, subdivision 4, of the Charter of Dallas (Special Acts Leg.,

1907) gives to the city the power "To lay out, establish, open, alter, widen, lower, raise, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and to vacate and close the same, and to require the removal from the streets and sidewalks of all obstructions, . . . signs, fruit stands, show cases and encroachments of every character upon said streets and sidewalks." Section 43 of article 14, among other powers, confers the following: "To license, tax and regulate draymen, hackmen, omnibus drivers, baggage wagon drivers and drivers of vehicles of every kind, and all others pursuing like occupations with or without vehicles, and prescribe their compensation, and to make it a misdemeanor for any person to attempt to defraud them of any legal charge for services rendered; to regulate stands for vehicles, and regulate, license and restrain runners for railroads, vehicles of any kind, hotels, public houses of any kind, or other business of any kind; to prohibit or regulate hacks, move wagons, baggage wagons or drivers thereof, from making public stands in the streets of the city, and the board of commissioners may, if in their judgment they deem best, prescribe certain bounds within which no hack, move wagon or other vehicle or wagon let for hire shall occupy any portion of the public streets therein for the purposes of a public stand or a private stand."

The ordinance, the enforcement of which is sought to be enjoined, provides, among other things, as follows: "An ordinance regulating the standing of move wagons, express wagons, hacks, and other vehicles let for hire, upon the public streets of the city of Dallas; providing for a license fee, and prescribing a penalty.

"Be it Ordained by the Board of Commissioners of the City of Dallas:

"Section 1. That hereafter it shall be unlawful for any person to use or occupy any portion of a public street in the city of Dallas for the purpose of a public stand, for the standing of any move wagon, express wagon, hack, automobile or motor vehicle, or other vehicle let for hire, without first making application in writing to the board of commissioners of the city of Dallas for a permit therefor, and obtaining from said board of commissioners, or under its authority, said permit, and paying the assessor and collector of taxes the license fee hereinafter mentioned; provided, however, that no permit shall ever be issued to any such person to use or occupy any portion of the streets within the hereinafter defined bounds, for the purpose of a public stand, for the standing of any move wagon, express wagon, hack, automobile or motor vehicle, or other vehicle let for hire, between the hours of 8:00 o'clock a. m. and 7:00 o'clock p. m. of each day. And it shall be unlawful for any such person to use or occupy any portion of any of said streets within the hereinafter named bounds, between said hours, for the purpose of a public stand, for the standing of any move wagon, express wagon, hack, automobile or motor vehicle, or other vehicle let for hire." (Here follows a description of the territory named, which is here omitted.)

"Section 2. That the term 'public stand,' as used in this ordinance, means any place on a public street that is being generally appropriated and used by a move wagon, express wagon, hack or hacks, automobile or

motor vehicles, or other vehicles let for hire, when not engaged in the transportation of passengers, freight or property, for the purpose of awaiting public or private patronage."

Section 3 provides for the owners of said vehicles paying a license fee, and manner of securing a permit, etc. Section 4 specifies that $2.50 be paid for one year for each vehicle drawn by one horse, and $5.00 for those drawn by two horses and motor vehicles. The balance of the ordinance prescribes rules and regulations for the manner in which the owners of said vehicles shall use and operate the same on the streets of the city, and providing penalties for the infraction of same. It also reserves to the commissioners the right to grant license to such persons as they deem proper, and also to revoke the license of any who violate said ordinance.

There can be no question, and there seems to be no contention to the contrary, but that the city of Dallas had the power by proper ordinance to prevent the incumbering or obstructing its streets, alleys, etc., and to that end regulate the use of public vehicles for hire, to fix stands for the same and prevent the use of certain streets as places for stands. (Ex parte Battis, 40 Texas Crim. Rep., 112.) This being conceded, we will consider the objections urged to the ordinance of the city sought to be enjoined.

Appellants complain that the provision of the ordinance which prohibits said vehicles from standing on the streets within certain boundaries between the hours of 8 o'clock a. m. and 7:00 o'clock p. m., is prohibitory of their doing business during that time, and is unreasonable and void, as the facts were admitted by the demurrers.

There is a general allegation in the petition that said ordinance is unconstitutional, unreasonable and void, and if enforced it will practically exclude these plaintiffs from doing business. There are no facts set out showing wherein the ordinance is unreasonable, or how they were prohibited from doing business. The ordinance does not prevent the use of the streets to appellants in conducting their business, but only prevents the using, within certain limits and certain streets, for standing such vehicles during the prescribed time. This the city had the power to do, and the petition should show wherein this power was exceeded by the city or wherein the unreasonableness lies. In the case of Battis, *supra,* where the Court of Appeals had under consideration an ordinance of Ft. Worth in reference to the standing of vehicles on the streets in some respects similar to the ordinance here under consideration, in passing on the refusal of the court to hear the facts to "show the conditions surrounding said streets constituting the *locus in quo*" in relation to the reasonable exercise of the power of the city, the court said: "We think the bill is defective in failing to state the facts desired to be proved," and then proceeded to consider the reasonableness of said ordinance as presented by the charter and ordinance. The ordinance in that case was held void as being unreasonable, because of its language inhibiting "the stoppage of vehicles on said streets in the city of Ft. Worth for any purpose, except to receive and discharge freight or passengers under it; no matter what the emergency might be, a person stopping a vehicle outside of the exceptions would violate the ordinance and be subject to punishment." The ordinance here under consideration is not worded as the one condemned, and is not subject to the same criticism. Neither the

charter nor the ordinance shows on its face to be unreasonable. The ordinance is not as restrictive as the Ft. Worth ordinance. It only prohibits the *standing* of such vehicles on the streets, and is not subject to the construction that owners of such vehicles would lay themselves liable to prosecution should an emergency require a stopping of same within said boundaries during the time specified by the ordinance.

The objection is made that said ordinance is void because it is discriminatory and partial, in that it gives the commissioners the discretion to say who shall and who shall not have permits. The principle here invoked is contrary to well-recognized authority. The right of granting license to one and denying to another is given in the interest of the public, and an ordinance is not void on that ground. (Fisher v. St. Louis, 194 U. S., 361; 21 Sup. Ct. Rep., 673; Davis v. Massachusetts, 167 U. S., 43; 17 Sup. Ct. Rep., 731; Wilson v. Eureka City, 173 U. S., 32; 19 Sup. Ct. Rep., 317.) There is no complaint that either of the parties had been refused license, and they are not in an attitude to complain. This last reason, if no other, we think, answers the contention that the ordinance is void, because discretion is given to revoke a license for the violation of its provisions.

The commissioners had the right to require a license and payment of a fee therefor, and the fee charged is not unreasonable, nor is it double taxation, therefore not in conflict with the Constitution. (Brown v. Galveston, 97 Texas, 1.)

The proposition is presented by the appellees that no property rights of appellants are involved in this suit, and therefore a court of equity will not interfere to prevent the enforcement of said ordinance. The city is not attempting to interfere with or in any manner take from them the control or use of their property. The ordinance only prescribes the manner in which the streets shall be used by persons desiring to operate vehicles for public hire. This the city had the power to do, and the only way it has of enforcing its observance is a resort to criminal prosecutions. The threatened suits alleged by appellants must have reference to criminal prosecutions, and the multiplicity thereof would depend upon the actions of themselves in the observance or violation of said ordinance.

Ordinarily an injunction will not lie to restrain criminal prosecutions; this for the reason that an adequate and complete remedy is provided by law.

In the case of Greiner-Kelley Drug Co. v. Trewett, 97 Texas, 377, where an injunction was sought to enjoin a threatened prosecution for a sale under the local option law, the injunction was denied. Mr. Justice Williams, speaking for the court, said: "The plaintiff seeks to have the court declare in advance, as a matter of law, that sales made under given circumstances would be lawful, but the courts appointed to try alleged violations of law are as competent to decide this question as the question of fact which would be involved, and to them is confided by law the function of deciding both."

In the case of City of Galveston v. Mistrot, 47 Texas Civ. App., 63, involving the same question as here presented, Mr. Justice Reese, in a well-considered opinion, held an injunction would not lie. See Ex parte Sawyer, 124 U. S., 200; Davis v. Los Angeles, 189 U. S., 781; Wade v. Nunnelly, 19 Texas Civ. App., 256.

There being no error in the dissolution of the injunction, the judgment is affirmed.

*Affirmed.*